UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:22-cv-23683-JEM/Becerra

CREELED, INC.,

Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS
AND UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

Defendants.
_____/

**REPORT AND RECOMMENDATION ON**
**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

**THIS MATTER** comes before the Court on Plaintiff CreeLED, Inc.'s ("Plaintiff") Motion for Entry of Preliminary Injunction (the "Motion"), ECF No. [5].[1] Plaintiff moves for entry of a preliminary injunction against the Defendants, Individuals, Partnerships, and Unincorporated Associations Identified on Schedule "A" attached to Plaintiff's Complaint, ECF No. [1] (collectively "Defendants"), and an order restraining the financial accounts used by Defendants pursuant to 15 U.S.C. § 1116, 17 U.S.C. § 502, Federal Rule of Civil Procedure 65, and The All Writs Act, 28 U.S.C. § 1651(a). *See* ECF No. [5].

The undersigned held a hearing on November 29, 2022, which was attended by counsel for Plaintiff only (the "Hearing"). *See* ECF No. [22]. During the Hearing, presented evidence

---

[1] Plaintiff's Motion is titled *Ex Parte* Motion for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets, ECF No. [5]. The District Judge, Jose E. Martinez, granted a Temporary Restraining Order on November 21, 2022, which is set to expire on December 5, 2022. ECF No. [10]. The District Judge referred the portion of the Motion seeking Preliminary Injunction to the undersigned for a Report and Recommendation. *Id.*

1

supporting the Motion. Defendants have not formally responded to the Motion for Preliminary Injunction, nor have they made any appearance or filing in this case, either individually or through counsel. Because the Plaintiff has satisfied the requirement for the issuance of a preliminary injunction, it is hereby **RECOMMENDED** that Plaintiff's Motion for Preliminary Injunction, ECF No. [5], be **GRANTED**.

I.     FACTUAL BACKGROUND[2]

Plaintiff is the owner of the federally registered trademarks identified in Schedule B (the "CreeLED Marks") attached to the Declaration of David Marcellino ("Marcellino Decl.") ECF No. [5-3], filed with Plaintiff's Motion. Plaintiff has expended substantial time, money, and other resources developing, advertising, and otherwise promoting the CreeLED Marks. *Id.* at ¶¶ 6-10, 16.

CreeLED actively polices and enforces its trademarks. Marcellino Decl. at ¶¶ 11-14. CreeLED suffers irreparable harm to its goodwill, as well as a direct monetary loss, any time third parties, including Defendants, sell goods using identical or substantially similar unauthorized copies or derivatives of the CreeLED Marks. *Id.* at ¶ 18.

Defendants do not have, nor have they ever had, the right or authority to use the CreeLED Marks for any purpose. *See* Marcellino Decl. at ¶ 11. Despite their known lack of authority to do so, Defendants are promoting and otherwise advertising, distributing, selling and/or offering for sale, through their respective Seller IDs, goods using the CreeLED Marks without authorization ("Defendants' Goods"). *Id.*; *see also* Declaration of Javier Sobrado ECF No. [5-4] ¶ 4 ("Sobrado Decl.").

Plaintiff alleges that Defendants' Goods are indistinguishable to consumers, both at the

---

[2] The facts herein are taken from Plaintiff's Complaint, ECF No. [1], the Motion, ECF No. [5], and the declarations submitted in support of the Motion.

point of sale and post-sale. Plaintiff is suffering irreparable harm and damage by the incalculable profit Defendants are deriving by using Plaintiff's CreeLED Marks to drive consumers to the e-commerce stores and commercial websites operating under the Seller IDs. Marcellino Decl. at ¶¶ 15-18.

Plaintiff investigated the promotion and sale of counterfeit and infringing versions of Plaintiff's branded products by the Defendants. *See* Marcellino Decl. at ¶¶ 11-14. Plaintiff accessed each of the e-commerce stores operating under the Defendants' Seller IDs, initiated the ordering process for the purchase of a product from each of the Seller IDs, bearing counterfeit copies and infringements of Plaintiff's CreeLED Marks, and requested each product to be shipped to an address in the Southern District of Florida. *See id.; see also* Sobrado Decl. at ¶ 5. Plaintiff conducted a review and visually inspected the Defendants' Goods and determined the products were nongenuine, unauthorized versions of the Plaintiff's products bearing the CreeLED Marks. *See id.*

Plaintiff filed a Complaint on November 9, 2022, alleging: (1) Trademark Counterfeiting and Infringement in violation of the Lanham Act, 15 U.S.C. § 1114; (2) False Designation of Origin in violation of the Lanham Act, 15 U.S.C. § 1125(a); (3) Common Law Unfair Competition; and (4) Common Law Trademark Infringement. ECF No. [1]. On November 10, 2022, Plaintiff filed the instant Motion seeking a temporary restraining order as well as a preliminary injunction. ECF No. [5]. On November 21, 2022, the District Judge, Jose E. Martinez, granted Plaintiff's temporary restraining order, which remains in effect until December 5, 2022. ECF No. [10].

## II.   LEGAL STANDARD

To obtain a preliminary injunction, a party must demonstrate "(1) a substantial likelihood

of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the nonmovant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. Rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case).

### III.   ANALYSIS

Plaintiff has produced evidence that demonstrates that there is a strong probability that consumers are likely to be confused by the Defendants' advertisement, promotion, sale, offer for sale, or distribution of goods bearing and/or using counterfeits and infringements of the CreeLED Marks.  Because of the infringement of the CreeLED Marks, the Plaintiff is likely to suffer immediate and irreparable injury if a preliminary injunction is not granted. The following specific facts, as set forth in the Plaintiff's Amended Complaint, Motion, and accompanying declarations, demonstrate that immediate and irreparable loss, damage, and injury will result to the Plaintiff and to consumers in view of the following considerations: (a) Defendants own or control Internet based e-commerce stores and websites which advertise, promote, offer for sale, and sell products bearing counterfeit and infringing trademarks in violation of the Plaintiff's rights; (b) there is good cause to believe that more counterfeit and infringing products bearing the Plaintiff's CreeLED Marks will appear in the marketplace; that consumers are likely to be misled, confused, and disappointed by the quality of these products; and that the Plaintiff may suffer loss of sales for its genuine products and an unnatural erosion of the legitimate marketplace in which it operates; (c) the balance of potential harm to the Defendants in restraining their trade in counterfeit and infringing branded goods if a preliminary injunction is

issued is far outweighed by the potential harm to the Plaintiff, its reputation, and its goodwill as manufacturer and distributor of quality products if such relief is not issued; and (d) the public interest favors issuance of a preliminary injunction to protect the Plaintiff's trademark interests, to encourage respect for the law, to facilitate the invention and development of innovative products, and to protect the public from being defrauded by the illegal sale of counterfeit goods.

Under 15 U.S.C. § 1117(a), the Plaintiff may be entitled to recover, as an equitable remedy, the illegal profits gained through the Defendants' distribution and sales of goods bearing counterfeits and infringements of the CreeLED Marks. *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (quoting *Fuller Brush Prods. Co. v. Fuller Brush Co.*, 299 F.2d 772, 777 (7th Cir. 1962) ("An accounting of profits under § 1117(a) is not synonymous with an award of monetary damages: '[a]n accounting for profits . . . is an equitable remedy subject to the principles of equity.'")). Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss & Co.*, 51 F.3d at 987 (citing *Federal Trade Commission v. United States Oil & Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984)). In light of the inherently deceptive nature of the counterfeiting business, and the likelihood that the Defendants have violated federal trademark laws, the Plaintiff has good reason to believe the Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained

### IV. CONCLUSION

Accordingly, it is hereby **RECOMMENDED** that Plaintiff's Motion for Preliminary Injunction, ECF No. [5], be **GRANTED** and a Preliminary Injunction be entered as follows:

1. Each of the Defendants, its officers, directors, employees, agents, subsidiaries,

distributors, and all persons in active concert or participation with any of the Defendants having notice of this Order are restrained and enjoined until further order from this Court:

    a. From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing the CreeLED Marks, or any confusingly similar trademarks, other than those actually manufactured or distributed by the Plaintiff;

    b. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by the Plaintiff, bearing and/or using the CreeLED Marks; (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing and/or using the CreeLED Marks; or (iii) any assets or other financial accounts subject to this Order, including inventory assets, in the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, any of the Defendants, including, but not limited to, any assets held by or on behalf of any of the Defendants.

2. Each of the Defendants, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any of the Defendants having notice of this Order shall immediately discontinue the unauthorized use of the CreeLED Marks on or in connection with all Internet based e-commerce stores owned and operated, or controlled by them, including the Internet based e-commerce stores operating under the Seller IDs.

3. Each of the Defendants shall not transfer ownership of the Seller IDs during the pendency of this action, or until further Order of the Court.

4. Upon receipt of notice of this Order, the Defendants and any third-party financial

institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms who is providing services for any of the Defendants, including but not limited to, AliExpress, Alipay, Dhgate, Dhpay, Joom, Wish, Wishpay, Amazon, Amazon Pay, Ebay, Etsy, and/or Taobao, and their related companies and affiliates (collectively, the "Third Party Providers"), shall after receipt of notice of this Order, restrain the transfer of all funds, including funds relating to ongoing account activity, held or received for the Defendants' benefit or to be transferred into the Defendants' respective financial accounts, restrain any other financial accounts tied thereto, and immediately divert those restrained funds to a holding account for the trust of the Court. Such restraining of the funds and the disclosure of the related financial institution account information (as provided below) shall be made without notice to the account owners or the financial institutions until after those accounts are restrained. No funds restrained by this Order shall be transferred or surrendered by any Third-Party Provider for any purpose (other than pursuant to a chargeback made pursuant to their security interest in the funds) without the express authorization of this Court.

5. Any Defendant or Third-Party Provider subject to this Order may petition the Court to modify the asset restraint set out in this Order.

6. This Order shall apply to the Seller IDs, associated ecommerce stores and websites, and any other seller identification names, e-commerce stores, domain names, websites, or financial accounts which are being used by Defendants for the purpose of counterfeiting and infringing the CreeLED Marks at issue in this action and/or unfairly competing with Plaintiff.

7. This Order shall remain in effect during the pendency of this action, or until such further dates as set by the Court or stipulated to by the parties.

8. Pursuant to 15 U.S.C. § 1116(d)(5)(D) and Federal Rule of Civil Procedure 65(c),

the Plaintiff shall maintain a bond in the amount of Five Thousand Dollars and Zero Cents ($5,000.00), as payment of damages to which the Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court.

## V. OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the District Court no later than **December 1, 2022 at 12:00 p.m.** Counsel for Plaintiff indicated at the hearing that there would be no objection. Defendants failed to appear. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Miami, Florida this 1st day of December, 2022.

                                          **JACQUELINE BECERRA**
                                          **UNITED STATES MAGISTRATE JUDGE**